[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on October 3, 1979 in Stamford, Connecticut. Two children were born to the wife during the marriage, a daughter Lisa Augustine who has reached her majority, and a son Michael Augustine, born January 12, 1987. Neither party has health insurance, and the child is covered under the Husky Plan through the State of Connecticut. The parties have lived separate and apart since February 8, 2000, when the plaintiff wife ("wife") and their son moved out due to allegations of abusive behavior on the part of the defendant husband ("husband"). She currently resides in her parent's home at 114 Soundview Court which she also shares with her brother. The husband currently lives in the marital residence at 11 Goodwin Street in Stamford.
The wife is 40 years old and in apparent good health. She has a high school equivalency education, which she obtained in December 2000, and limited work experience. According to her testimony, the husband would not allow her to work during the marriage. It was only during the marriage when the husband experienced some health and job problems that she went back to work. She currently works approximately 30 hours as a part-time cashier for Flick International Corporation, where she earns approximately $19,000 per year. She indicated that she would like to work more, and has, in fact, increased her hours from the time she began the job.
The husband is 42 years old and is currently unemployed. He also did not complete a formal high school education. In addition, he testified that he suffers from a variety of aliments including borderline diabetes, sciatica, high blood pressure, and irritable bowel syndrome. The health problems surfaced somewhere in the early to mid 1990's, although he continued to work with them. On two separate occasions, upon questioning by the court, the husband conceded that these ailments were not life threatening and did not prevent him from working; they did, however, have an impact on his work and were at times debilitating. Again, on two separate occasions, on inquiry by the court, he further conceded that he has "chosen not to work at this time" and will wait until such time when he "can seek some treatment" for his ailments. Upon further questioning with regard to why he has not sought treatment to date, he indicated that "lack of funds and health insurance" has prevented him from doing so. When he was employed, he worked for CT Page 17127 Cognitronics Corporation in Stamford as an assembler for approximately 15 to 18 years. He stopped briefly in 1993 and went to work for Westinghouse maintaining satellite dishes until June of 1998, and he has not worked since. The evidence indicates that in 1996 he eamed $68,000 and in 1997 approximately $58,000. In 1998 he worked half of the year at which time his job was eliminated.
In June 1993, the property at 11 Goodwin Street in Stamford was conveyed by quit claim deed to the husband and his sister as joint tenants by their mother, who remained living in the house until her death. The husband purchased his sister's interest in the premises in July 1997. The evidence indicates that he paid his sister $65,000 — $50,000 for her interest and approximately $15,000 representing lost rental income to her while the husband and wife were living there. The husband financed this purchase with a $50,000 mortgage and cash from marital savings. The parties stipulate that the current balance of the mortgage is $34,363.
The parties have no other significant assets. The evidence indicates that the husband had a substantial collection of various items including baseball cards totaling $100,000, some acquired before and some during the marriage. of that original total, $75,000 is now gone without satisfactory explanation, and of the remaining $25,000, much has been given away, some to Dina DiCarlo. The husband implied that both the wife and their daughter, who had access to the items, were somehow responsible for their disappearance. That the value is approximately $25,000 left. In addition, both parties testified that at one time they began to accumulate cash which they stored in two places in the house. Both parties testified that there was between $39,000-$40,000 cash secreted away in the house. That cash apparently no longer exists, and each party claims the other has removed it at or about the commencement of this action. The husband indicated that he had been considering various possible money making schemes and discovered the money missing after a conversation with his wife at which time his intention to remove some of those funds to invest in just such a venture. The wife led him to believe that the monies were not available. She left the home shortly after that conversation and has not returned. In addition, the parties indicated that there is approximately $5000 left of their joint savings. At the time of the filing for divorce, the wife testified that she closed the joint checking account at First County Bank with somewhat over $1,350.00 in it, and she also took $7,000.00 from the joint savings account at the same institution leaving approximately $5000.00 which the husband later withdrew.
The wife, as custodian, is also holding approximately $50,000 that was given to the children by their grandmother to be used for their benefit CT Page 17128 and/or education. At one point the wife transferred some of the daughter's funds to an account which she holds for the benefit of their son, thus commingling these accounts. The testimony is somewhat muddled, but the court believes that both parties were aware that the wife was making this transfer, and that the transfer was made because they were afraid that their daughter, who was somewhat estranged from both of them, would take her funds and spend them needlessly.
It is clear to the court that this marriage has been under serious strain from early on. The wife testified that the husband is a violent and controlling man, to such a degree that he did not want her to work outside of the home. At one point after he had lost his job, at the husband's request they took in their neighbor, Dina DiCarlo, and her two children. While this caused some major tension in the household, however, the testimony is pretty clear the husband and wife had not been sleeping together and had had no sexual relations for some time. The husband testified that his relationship with Ms. DiCarlo was not a romantic interest, that she helped with the bills, and that they both slept on a couch in the living room. The wife claimed Ms. Dina DiCarlo's two children in essence evicted their son from his room. The court finds the husband's testimony to be less than credible in this regard. Needless to say, the court believes that the relationship between Ms. DiCarlo and the defendant was of a sexual nature and continues to this day both of them living in the Goodwin Street property. Furthermore, the court believes she continues to help with the family finances. Another bone of contention is the fact that the husband is somewhat estranged from his son Michael. He indicated he has not seen him for 18 months in his words "loves him to death" and wants to restore his relationship with him. The court believes that the wife has contributed in some fashion to this estrangement. The husband attributes the breakdown of the marriage to lack of communication, the wife's insults, and her lack of support for his efforts. He indicates that they stopped sleeping together when she insulted him and threw him out of the marital bedroom. He also indicates that he objected to the wife's use of regular corporal punishment including striking the children with a wooden stick. He also testified that she was not a good housekeeper.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction. CT Page 17129
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown. However, the court believes that the husband's controlling behavior and his relationship with Ms. DiCarlo have played a significant role in the breakdown.
4. That the husband suffers from a variety of ailments none of which individually or collectively prevents him from engaging in some form of gainful employment; that the husband has voluntarily chosen not to seek or to engage in gainful employment; that the court has before it sufficient evidence to make a determination as to his earning capacity; that the court finds same to be at least $50,000 per annum; and that it is equitable and appropriate to consider his earning capacity in making its orders regarding alimony and child support. Hart v. Hart,19 Conn. App. 91, 94-95 (1989).
5. That the husband's live-in companion, Dina DiCarlo, has made and continues to make regular and consistent financial contributions to the husband's household; and that it is equitable and appropriate for the court to consider same in arriving at its financial orders. Unkelbach v.McNary, 244 Conn. 350 (1998).
6. That the wife has a limited earning capacity in large measure due to her lack of work experience and her limited formal education; that her ability to accumulate assets in the future, in particular for retirement is limited; that during the marriage, the husband discouraged the wife from obtaining gainful employment outside the home; that she has made a substantial contribution to the marriage as homemaker; and that the court has attributed significant weight to these factors as well as the length of the marriage in arriving at its financial orders herein.
7. That the presumptive basic child support is $207.00 per week; and that the husband's share is $139.00 per week.
8. That the real property at 11 Goodwin Street, Stamford, Connecticut, standing in the name of the husband, was acquired during the marriage, in part by transfer from the husband's mother by gift, and in part by purchase from the husband's sister by means of a mortgage and cash from marital savings; that the fair market value of the property is $192,500; that the current balance of the mortgage is approximately $34,000; that during the marriage, in addition to her duties as homemaker, the wife provided care and companionship to the husband's ailing mother who resided with them in the marital home, and which the court finds to be CT Page 17130 significant contributions; and that it is equitable and appropriate that the wife share in the equity therein, and that the court may also take into consideration the transfer of a one-half therein by the husband's mother.
9. That the testimony of both parties supports the fact that on or about the time of the commencement of this action between $39,000 and $40,000 in cash representing marital savings was hidden by them in the marital home; that at or about the time of the commencement of this action said funds were removed from the family home; that at trial each party suggested to the court that the other had removed same; and that insufficient evidence was introduced to enable the court to make a clear determination as to whether or not either party, or for that matter a third party, removed said funds.
10. That prior to and during the marriage the husband acquired a substantial collection of memorabilia, including a baseball card collection; that according to the testimony of the husband at or about the time of the commencement of the present action, the collection was worth approximately $100,000, three-quarters of which is now missing and unaccounted for; that at the time of trial the husband testified that he had given away a large portion of the remainder of the collection, in part to Ms. DeCarlo, having a value of approximately $25,000; that while the court was not presented with sufficient evidence to make a precise determination as to what portion was acquired by the husband prior to marriage, a portion was acquired during the marriage which is marital property; that the husband's testimony regarding the disposition of virtually all of the collection as lacking in credibility; and that it is equitable and appropriate for the court to take this into account in the division of other assets.
11. That during the marriage, the husband was vested in a certain retirement plan at his former employer entitled Cognitronics Corporation Pension Plan ("Plan"); that as of August 31, 2001, the value of a lump sum payment was $8,651.46; that the Plan is a marital asset; and that it is equitable and appropriate that the wife share in the value of the Plan together with any interest or other additions thereto as of this order or the date of distribution, whichever is later.
12. That during the marriage certain funds were gifted to and set aside for the benefit of both children with the wife as custodian; that the total of both accounts is approximately $50,000; that at some point thereafter, the wife transferred a portion of the funds held for the daughter to the account held for the benefit of the son; that said transfer was with the knowledge and assent of the husband; that the purpose of the transfer was to limit access by the daughter at the time of CT Page 17131 her maturity; and that it is appropriate that to the extent practicable, the two funds shall be separated and the status quo be restored taking into account pro rata any appreciation or depreciation in value.
13. That the husband's relationship with his minor son Michael has suffered during the pendency of this action; that it is in the best interest of the minor child that a normal relationship with his father be restored; that the husband should have regular and significant contact with the child; and that both parties and the minor child would benefit by the intervention of the Family Relations Office or some other form of counseling.
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. The wife shall have sole custody of the minor child, MICHAEL AUGUSTINE, born January 12, 1987, subject to the reasonable, liberal and flexible visitation rights of the husband. Unless the parties are able to agree on an appropriate visitation schedule, the matter is hereby referred to the Family Relations Office for a recommendation, after an interview with both parents and the minor child, and the court shall retain jurisdiction to make a final determination. Thereafter, if the parties are unable to agree upon any issue regarding appropriate visitation, they shall first bring the dispute to the Family Relations Office mediation prior to a determination by the Court.
3. Commencing January 1, 2002, the husband shall pay to the wife the sum of $1.00 per year as and for periodic alimony, until the death of either party, the remarriage of the wife, or December 31, 2011, whichever shall sooner occur. Notwithstanding any other grounds for modification, the husband's obtaining gainful full or part-time employment, shall be deemed a substantial change of circumstances, and the wife shall have the right to move for a modification of this order.
4. Commencing January 1, 2002, and weekly thereafter, the husband shall pay to the wife the sum of $139.00 as and for basic child support for the minor child. In the event that the child is still in high school upon reaching his eighteenth birthday, then in that event, any child support order shall continue until the child reaches the age of nineteen years or the first day of the first month following his graduation from high school, whichever shall sooner occur pursuant to Section 46b-84(b) C.G.S. CT Page 17132
5. For so long as the husband shall be obligated to pay child support for the minor child, un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 65% by the husband and 35% by the wife. Should health insurance be obtained for the benefit of the minor child, the provisions of Section 46b-84(e) shall apply.
6. As to the real estate at 11 Goodwin Street, Stamford, Connecticut, standing in the name of the husband, the husband shall have exclusive possession of the real estate, subject to the existing indebtedness, and he shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the wife harmless from any further liability thereunder. The husband shall pay to the wife the sum of SIXTY THOUSAND AND NO/100 DOLLARS ($60,000.00) upon the sale or other transfer of title to the property (or any portion of it), a refinance of the existing mortgage or the obtaining of new or additional financing, or one (1) year from the date of this Memorandum of Decision, whichever shall sooner occur. The husband shall execute a simple Promissory Note to the wife containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of his default, and which shall not bear interest if paid on or before the end of such one year period, but which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Said Promissory Note shall be secured by a mortgage deed. Both the deed and note shall be prepared by the attorney for the husband, executed by the husband, and delivered to the attorney for the wife within thirty (30) days from the date of this Memorandum of Decision. In the event of the failure of the husband to execute and deliver the promissory note and mortgage deed pursuant to this order meet his obligations hereunder, the wife may petition the Superior Court for relief which may include, inter alia, an immediate sale of the premises or a judicial transfer pursuant to §§46b-66a and 46b-81 C.G.S.
7. Personal property shall be divided as follows:
A. The minor child's furniture shall be transferred by the husband, or at his sole expense, to the wife's residence within two (2) weeks from the date of this order.
B. The home furnishings (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
C. Each party shall be entitled to keep the automobile(s) which they are CT Page 17133 currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
D. The following items shall be divided as follows:
(1) The husband shall be entitled to the two cemetery plots at St. John's Cemetery free and clear of any claims by the wife, who shall transfer her interest therein to the husband within thirty (30) days from the date of this order.
(2) The New Horizons Time Share shall be the sole property of the wife, and the husband shall transfer his interest to the wife within thirty (30) days from the date of this order, and she shall own same free and clear of any claims by the husband, subject to any costs and expenses associated therewith from which she shall indemnify and hold the husband harmless.
(3) The Cognitronics Corporation stock (258 shares at the time of hearing) shall be divided equally within thirty (30) days from the date of this order.
(4) The remaining collectibles shall belong to the husband free and clear of any further claims by the wife.
8. Effective as of the date of this Memorandum of Decision, the then balance of the Cognitronics Corporation Pension Plan ("Plan") through the husband's former employer, in the form of a lump sum distribution, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by attorney for the wife, 50% to the husband and 50% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
9. Each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action.
10. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from CT Page 17134 any further liability thereon.
11. The wife shall be entitled to claim the personal exemption for the minor child commencing with the tax year 2001 and thereafter.
12. Within thirty (30) days from the date of this order, to the extent practicable, the wife shall separate the funds she is holding for the benefit of both children, and the status quo prior to the transfer of funds from the daughter's account to that of the son be restored taking into account pro rata any appreciation or depreciation in value.
13. The husband shall maintain his existing life insurance, and shall name the wife and minor child as equal beneficiaries thereof for so long as he has an obligation to pay alimony and/or child support under the terms of this decree.
14. Both parties shall complete the Parenting Education Program within sixty (60) days from this order and shall provide the court with written proof of satisfactory completion thereof.
THE COURT
SHAY, J.